UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK HART,

    Plaintiff,

v.

NORTH STAR RECOVERY, LLC,

    Defendant.

_____/

Case No. 1:25-cv-480

Hon. Hala Y. Jarbou

## OPINION

Plaintiff Jack Hart brings this lawsuit under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and Michigan law, alleging that Defendant North Star Recovery, LLC repossessed his vehicle in a manner that breached the peace. Before the Court is North Star's motion to dismiss for failure to state a claim (ECF No. 19). For the reasons explained below, the Court will deny the motion.

### I. BACKGROUND

This case arises from North Star's repossession of Hart's car.[1] (Am. Compl. ¶¶ 10, 15, 20, ECF No. 15.) The car was financed with a loan from Credit Acceptance, who maintains that the loan is delinquent. (*Id.* ¶¶ 11–12.) Credit Acceptance thus sent North Star to recover the car. (*Id.* ¶¶ 14, 20.) An agent of North Star arrived at Hart's home in Bronson, Michigan, at about 6:00 a.m. on August 9, 2024. (*Id.* ¶¶ 14–15.) When the agent pulled his tow truck into Hart's driveway, Hart—who had been sitting on his porch—approached the agent and asked why he was there. (*Id.* ¶¶ 15–19.) The agent explained that he was repossessing Hart's car. (*Id.* ¶ 20.) Hart replied that

---

[1] For the purposes of deciding the motion to dismiss, the Court sets out the facts as alleged by Hart.

the agent "had to leave his private property" and "could not repossess the vehicle," and that Hart "was prepared to call law enforcement." (*Id.* ¶ 21.) The agent said that he had paperwork authorizing him to repossess the car, and that he was going to tow it. (*Id.* ¶ 22.) Hart "again instructed the . . . agent to leave his private property and stood in between the tow truck and his vehicle in order to physically prevent the . . . agent from taking his vehicle." (*Id.* ¶ 23.)

At that point, the agent "moved forcefully into [Hart]'s space, forcing [Hart] to step back and ball up his fists." (*Id.* ¶ 24.) The agent "then raised his voice and started yelling and cursing at [Hart]." (*Id.* ¶ 25.) The agent threatened to call the police, so Hart decided to call the police himself. (*Id.* ¶ 26.) When the police arrived, they told Hart that the agent was allowed to repossess the car. (*Id.* ¶ 27.) Hart continued to object, but the agent towed the car. (*Id.* ¶¶ 28–29.) The agent was only able to accomplish this due to the police presence. (*Id.* ¶ 30.)

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

2

'show[n]'—that the pleader is entitled to relief." *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

### III. ANALYSIS

Hart brings three claims against North Star: (1) repossession of property without a legal right, in violation of the FDCPA, 15 U.S.C. § 1692f; (2) breach of the peace repossession, in violation of Mich. Comp. Laws §§ 440.2975, 440.9609; and (3) conversion. All three claims rest on essentially the same legal theory. The FDCPA bars repossession without a "present right to possession of the property," 15 USC § 1692f(6)(A), and one's right to possession is determined by "the applicable state self-help repossession statute." *Alexander v. Blackhawk Recovery & Investigation, LLC*, 731 F. Supp. 2d 674, 679 (E.D. Mich. 2010). Similarly, repossession only qualifies as conversion if the creditor lacks a right to possess the property; the self-help statute provides such a right. *See Wells Fargo Bank NA v. Vicky Richter Enters.,* No. 348033, 2020 WL 4249283, at *2 (Mich. Ct. App. July 23, 2020). Thus, all three of Hart's claims depend on North Star's alleged violation of Michigan's self-help statute.

Michigan's self-help statute authorizes a secured creditor to repossess collateral "without judicial process if it proceeds without breach of the peace." Mich. Comp. Laws § 440.9609(2).[2] Hart argues that the repossession agent's actions qualify as a breach of the peace. Section 440.9609 enacts a provision of the Uniform Commercial Code (UCC), which "does not define or explain the conduct that will constitute a breach of the peace, leaving that matter for continuing development

---

[2] Similarly, Mich. Comp. Laws § 440.2975 provides that when a lessee defaults, the lessor may take possession of the goods "without judicial process if that can be done without breach of the peace." *Id.*

3

by the courts." UCC § 9-609, cmt. 3 (2023). The parties propose divergent definitions of "breach of the peace." Hart contends that "a breach of the peace occurs when a repossession continues over the repossessed party's objections" (Pl.'s Resp. 8, ECF No. 28), whereas North Star argues that "an individual only breaches the peace when the individual's conduct is violent or tends to provoke violence" (Def.'s Br. in Supp. 6, ECF No 19-1).

Because this case turns on interpretations of Michigan law, this Court "must follow the decisions of the state's highest court when that court has addressed the relevant issue." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (internal quotation marks omitted). If the state's highest court has not ruled on the issue, this Court should "anticipate how the relevant state's highest court would rule." *Id.* "Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Id.*

As the parties indicate, the Michigan Supreme Court has never interpreted § 440.9609(2). And there appears to be only a single relevant decision from an intermediate appellate court: *People v. Anderson*, 912 N.W.2d 607 (Mich. Ct. App. 2018). *Anderson* was a criminal case where the defendant was convicted of assaulting two repossession agents when they tried to take his car. *Id.* at 625–26. The defendant came out of his house while the repossession took place, and the agents informed him that they had a repossession order. *Id.* at 626. As one agent went to get the order, the other "continued securing the [defendant's car] onto the tow truck." *Id.* "Instead of waiting for [the agent] to return with the [order], [the defendant] repeatedly told the men to 'drop the car' and then brandished his weapon." *Id.* The defendant then fired his gun at the agents. *Id.*

At issue in *Anderson* was whether the defendant's counsel had been ineffective by failing to argue that the repossession agents had violated § 440.9609 by breaching the peace. *Id.* at 629–

4

30.  The court rejected this argument because the defendant did not establish a violation of § 440.9609.  *Id.* at 630.  The repossession agents did not breach the peace because they "worked swiftly, quietly, and under cover of darkness specifically to lessen the chances of confrontation with [the defendant]."  *Id.*  And "[t]o the extent that a breach of the peace occurred, it was a result of [the defendant's] decision to shoot at the victims, rather than a result of any conduct on the part of [the victims]."  *Id.*

*Anderson* suggests that under Michigan law, continuing with a repossession despite a verbal objection does not constitute a *per se* breach of the peace.  Plaintiff disagrees with this interpretation and asserts that, based on the court's summary of the facts in *Anderson*, it is not clear that the agents continued with the repossession after the verbal objection. (Pl.'s Br. 14.)  However, if the defendant "*repeatedly* told the men to 'drop the car' and then brandished his weapon" (emphasis added), it is reasonable to infer that the agents continued with the repossession despite the defendant's objections.  Otherwise, he would not have repeated those objections and brandished a weapon.

As noted above, *Anderson* is persuasive authority unless there is reason to believe the Michigan Supreme Court would interpret § 440.9609 differently.  Hart points to *Hensley v. Gassman*, 693 F.3d 681 (6th Cir. 2012), a Sixth Circuit case out of Michigan that involved a Fourth Amendment claim against a police officer for his participation in a repossession.  In deciding whether the officer's conduct constituted state action, the court explained that "courts have found that an officer's conduct can facilitate a repossession if it chills the plaintiff's right to object." *Id.* at 689.  Chilling the plaintiff's right to object is significant because, "[a]s numerous state court cases and secondary authorities have recognized, an objection, particularly when it is accompanied by physical obstruction, is the debtor's most powerful (and lawful) tool in fending off an improper

5

repossession because it constitutes a breach of the peace requiring the creditor to abandon his efforts to repossess." *Id.* at 689–90. As North Star points out, this principle is dicta because it did not ultimately factor into the Sixth Circuit's decision. *See id.* at 691–92 (noting that the presence of police did not chill the plaintiff's ability to object). And the Sixth Circuit drew this principle from out-of-state authority and secondary sources analyzing the UCC, rather than Michigan case law. *See id.* at 691 n.7. Thus, though *Hensley* contains guidance as to the dominant nationwide interpretation of the UCC, it does not provide a binding interpretation of Michigan law.

The parties cite abundant authority from other states that have also adopted the UCC self-help provision. "[S]ince the UCC is intended to be interpreted uniformly across the country, it is appropriate to look to the decisions of other courts in other states for guidance." *Union Carbide Corp. v. Consumers Power Co.*, 636 F. Supp. 1498, 1501 (E.D. Mich. 1986). These out-of-state decisions indicate that interpretations of "breach of the peace" are anything but uniform. Some courts have held that repossession after a verbal objection constitutes breach of the peace. *See, e.g.*, *Hopkins v. First Union Bank*, 387 S.E. 2d 144, 146 (Ga. Ct. App. 1989); *Massengill v. Ind. Nat'l Bank*, 550 N.E.2d 97, 99 (Ind. Ct. App. 1990); *see* also 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 34-8 at 447 (6th ed. 2010) ("The debtor's opposition, however slight and even if merely oral, normally makes any entry or seizure a breach of the peace.") Others have focused on whether the conduct has a tendency to cause violence, *see, e.g.*, *Madden v. Deere Credit Servs., Inc.*, 598 So. 2d 860, 865 (Ala. 1992); *Johnson v. Grossinger Motorcorp, Inc.*, 753 N.E.2d 431, 440 (Ill. Ct. App. 2001); *Salisbury Livestock Co. v. Colo. Cent. Credit Union*, 793 P.2d 470, 475 (Wyo. 1990), or whether actual violence occurs, *see Sperry v. ITT Com. Fin. Corp.*, 799 S.W.2d 871, 879 (Mo. Ct. App. 1990). Finally, some courts have applied a holistic approach based on the reasonableness of the repossession. *See, e.g.*, *Davenport v.*

6

*Chrysler Credit Corp.*, 818 S.W.2d 23, 29 (Tenn. Ct. App. 1991); *Droge v. AAAA Two Star Towing, Inc.*, 468 P.3d 862, 874 (Nev. Ct. App. 2020).

As these cases illustrate, there is no universal interpretation of the UCC self-help provision. Indeed, "[c]onsistent with the UCC's rejection of a specific definition of breach of the peace, most courts simply resolve breach-of-the-peace cases without adopting a definition of the term itself, instead focusing on the specific factual circumstances of each case." *Lavalley v. Skyline Recovery Serv., Inc.*, 788 F. Supp. 3d 224, 231 (D. Mass. 2025) (internal quotation marks omitted). Further, even if this Court adopts the Michigan Court of Appeals's reasoning in *Anderson*, that case only indicates that repossession despite a verbal objection does not always constitute a breach of the peace; it provides no standard for what *does* constitute a breach of the peace. North Star suggests that the interpretation by Michigan courts of criminal "breach of the peace" offenses is instructive. While some courts interpreting the UCC self-help provision have looked to criminal "breach of the peace" cases, *see Garcia v. Dezba Asset Recovery, Inc.*, 665 F. Supp. 3d 390, 406 (S.D.N.Y. 2023), others have held that "breach of the peace" in the UCC has a broader meaning than in the criminal context, *see Davenport*, 818 S.W.2d at 29; *General Elec. Credit Corp. v. Timbrook,* 291 S.E.2d 383, 384 (W. Va. 1982).

Ultimately, the Court need not articulate a precise definition of "breach of the peace" because Hart has sufficiently alleged that a breach of the peace occurred based on the potential for violence. Regardless of the specific standard adopted, courts agree that the "breach of the peace" rule is designed to prevent disagreements over repossession from turning violent. *See, e.g.*, *Gable v. Universal Acceptance Corp.*, 338 F. Supp. 3d 943, 950 (E.D. Wis. 2018). Barring repossessions that involve confrontations avoids "beckon[ing] the repossessing creditor to the brink of violence." *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 226 (D. Conn. 2014) (quoting *State v.*

7

*Indrisano*, 613 A.2d 1375, 1380 n. 7 (Conn. Ct. App. 1992)). Accordingly, this Court predicts that the Michigan Supreme Court would consider an action that tends to cause violence to be a breach of the peace. Indeed, even North Star agrees with this formulation. (*See* Def.'s Br. in Supp. 6.) Furthermore, an action that tends to cause violence would also satisfy Michigan's standard for criminal breach of the peace. *See Cusumano v. Dunn*, No. 349959, 2020 WL 5079615, at *7 (Mich. Ct. App. Aug. 27, 2020) (defining criminal breach of the peace as "seriously disruptive conduct involving abusive, disorderly, dangerous, aggressive, or provocative speech and behaviors tending to threaten or incite violence.").

Here, Hart alleges that he verbally objected to the repossession, and then physically placed himself in front of the car. In response, North Star's agent "moved forcefully into [Hart]'s space, forcing [Hart] to step back and ball up his fists." (Am. Compl. ¶ 24.) The agent "then raised his voice and started yelling and cursing at [Hart]." (*Id.* ¶ 25.) Moving so close to a person that they must take a step back, and then shouting profanities at them, is the sort of conduct that tends to provoke violent reactions. Therefore, regardless of whether Hart's verbal objection was sufficient to create a breach of the peace, he has plausibly alleged that the agent's subsequent conduct constituted a breach of the peace.

This conclusion is strengthened by the fact that the repossession ultimately occurred only due to the presence of the police. As the comments to the UCC recognize, the self-help statute "does not authorize a secured party who repossesses without judicial process to utilize the assistance of a law-enforcement officer." UCC § 9-609, cmt. 3; *see also Roberts v. Image Recovery Serv., Inc.*, No. 24-CV-01119-JPG, 2025 WL 2896460, at *3 (S.D. Ill. Oct. 10, 2025) (collecting cases). This is because "the presence of a police officer, by itself, 'is sufficient to chill the legitimate exercise of the defaulting party's rights.'" *Roberts*, 2025 WL 2896460, at *3

8

(quoting *Waisner v. Jones*, 755 P.2d 598, 602 (N.M. 1988)). North Star argues that the presence of police did not make this repossession unlawful because Hart called them to the scene. But Hart alleges that the officers "informed [Hart] that the repo agent had the right to tow the vehicle," and that the agent "was ultimately only able to repossess [Hart]'s vehicle due to the presence of the armed and uniformed police officers." (Am. Compl. ¶¶ 27, 30.) The officers' presence thus chilled Hart's ability to exercise his rights, regardless of whether he initially called them there.

North Star also contends that if a breach of the peace occurred, it was the fault of Hart rather than the repossession agent. This contention reveals another split in the case law interpreting the UCC self-help provision. Some courts have held that the provision's language—allowing repossession only if the creditor "proceeds without breach of the peace"—implies that a repossessor can violate the provision even if the debtor causes the breach. *See, e.g.*, *Lavalley*, 788 F. Supp. 3d at 230 ("[I]f the UCC drafters wanted to cabin this limitation to specifically only those breaches caused by actions of the secured creditor, they could have said so by, for example, authorizing self-help repossessions if the secured creditor proceeds without breach*ing* the peace." (cleaned up)). On the other hand, the Michigan Court of Appeals observed in *Anderson* that "[t]o the extent that a breach of the peace occurred, it was a result of [the defendant's] decision to shoot at the victims, rather than a result of any conduct on the part of [the victims]." 912 N.W.2d at 630. This statement implies that a repossession agent only violates the statute if they bear some responsibility for breaching the peace.

Once again, the Court need not resolve this disagreement because Hart's complaint survives dismissal under either standard. It does not appear that Hart caused any breach of the peace merely by verbally objecting and stepping in front of his car. Rather, the alleged breach occurred when the repossession agent moved towards Hart and shouted at him; that was the

9

moment that violence became a likely outcome of the interaction. Therefore, even if a repossessor only violates § 440.9609 when it causes a breach of the peace, Hart has alleged sufficient facts to overcome the motion to dismiss.

### IV. CONCLUSION

For the reasons explained above, Hart has sufficiently alleged that North Star's agent breached the peace while repossessing Hart's car, in violation of Mich. Comp. Laws § 440.9609(2). Because all of Hart's claims are premised on this alleged violation, all three claims survive the motion to dismiss.

An order will issue in accordance with this Opinion.

Dated: October 21, 2025                         /s/ Hala Y. Jarbou
                                                HALA Y. JARBOU
                                                CHIEF UNITED STATES DISTRICT JUDGE