UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK HART,

Plaintiff,

v.

NORTH STAR RECOVERY, LLC,

Defendant.

Case No. 1:25-cv-480

Hon. Hala Y. Jarbou

______________________________/

**OPINION**

Plaintiff Jack Hart brings this lawsuit under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*., and Michigan law, alleging that Defendant North Star Recovery, LLC, repossessed his vehicle unlawfully. The Court previously denied North Star's motion to dismiss. (10/21/2025 Order, ECF No. 33.) Now before the Court are Hart's motion for partial summary judgment on the issue of liability (ECF No. 55) and North Star's cross-motion for summary judgment (ECF No. 63). For the reasons explained below, the Court will grant Hart's motion and deny North Star's motion. The Court finds that North Star is liable for violations of the FDCPA and Michigan law, though this Opinion does not address the issue of damages.

**I. BACKGROUND**

This case stems from North Star's repossession of a 2018 Hyundai Santa Fe from Hart's driveway on August 9, 2024. The car initially belonged to Hart's father, who passed away in November of 2023. (Hart Dep. 8–9, ECF No. 66-1.)[1] The estate was not probated, and the car remained titled in Hart's father's name. (*Id.* at 9–10.) But Hart understood that his father had

[1] Excerpts of this deposition are also available at ECF Nos. 57-1 and 67-1.

wanted him to have the car, so he took it to his house and began to make payments on the loan associated with it. (*See id.* at 9, 12.) At some point he stopped making the payments, and the lender, Credit Acceptance, hired North Star to repossess the car.

According to Hart's testimony, at around 6:00 a.m. on August 9, Hart and his wife saw a North Star tow truck pull into their driveway. (*See id.* at 13.) Hart immediately ran out to speak to the driver, Ian Anderson. When Anderson got out of the truck, Hart asked him why he was there, and Anderson said he was repossessing the Santa Fe. Hart responded, "[R]espectfully, you are not taking anything today, and you need to get off my property." (*Id*. at 14.) After repeatedly telling Anderson to leave, Hart "lost [his] cool," "started yelling," and told Anderson "to get the F off [his] property." (*Id.*) When Hart realized that Anderson was not going to leave, he "positioned [him]self between the tow truck and the Santa Fe" to prevent Anderson from towing the car. (*Id.*) As Hart was stepping towards the car, Anderson quickly walked toward Hart, which caught Hart off guard and caused him to jump back. (*Id.* at 16–17.) Hart viewed Anderson's movements as "aggressive," though he acknowledged at his deposition that "[l]ooking back now . . . [Anderson] could have just been moving fast." (*Id.* at 18–19.) Hart and Anderson yelled at each other, and Hart thought they might "throw down at one point," but no violence occurred. (*Id.* at 16, 18–19.) Hart told Anderson that he was going to call the police, and Anderson responded, "Go right ahead, I have got F'ing paperwork." (Hart Dep. 14.) Hart called 911, and things "calmed down" once "the police were en route." (*Id.* at 19.) When the police arrived, they told Hart that Anderson had the proper paperwork and could tow the car, which he did. (*Id.* at 24.) Hart has not recovered the car.

Although Anderson did not have a clear memory of the day in question, some of his testimony contradicted Hart's. For example, Anderson testified that he did not remember whether

Hart was yelling, but he himself did not yell or curse. (Anderson Dep. 46–47, ECF No. 67-3.) In addition, Anderson testified that Hart did not stand in between the tow truck and the car to try to stop Anderson from taking it. (*Id.* at 33.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288–89 (1961)). Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id.* The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

"[T]he standard that a movant must meet to obtain summary judgment depends on who will bear the burden of proof at trial." *Trs. of Iron Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC*, 115 F.4th 480, 488 (6th Cir. 2024) (alteration in original) (quoting *Pineda v. Hamilton County*, 977 F.3d 483, 491 (6th Cir. 2020)). "[W]hen the moving party bears the burden of proof [at trial], their initial summary judgment burden is higher in that [they] must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.* (cleaned up). When the moving party does not bear the burden of proof at trial, they may meet their initial burden at summary judgment by "submitting affirmative evidence that negates an essential element of the nonmoving party's claim," *Kava v. Peters*, 450 F. App'x 470, 473 (6th Cir. 2011) (cleaned up), or

by "pointing out the lack of evidence to support an essential element" of that claim, *Rockwood Auto Parts, Inc. v. Monroe County*, 155 F.4th 557, 566 (6th Cir. 2025) (cleaned up). The nonmovant must then present "sufficient evidence from which a jury could reasonably find in [their] favor." *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1230 (6th Cir. 2025) (cleaned up).

## III. ANALYSIS

### A. Ownership of the Car

Hart brings an FDCPA claim for unfair debt collection practices, *see* 15 U.S.C. § 1692f, and state law claims for conversion and unlawful repossession, *see* Mich. Comp. Laws § 440.9609.[2] As a preliminary matter, North Star argues that Hart cannot bring any of his claims because he did not own the vehicle at the time of the repossession. But the Court disagrees with North Star's reasoning.

First, a plaintiff need not be a debtor to bring suit under the FDCPA. The FDCPA creates civil liability for "any debt collector who fails to comply with any provision of this subchapter with respect to *any person*." 15 U.S.C. § 1692k(a) (emphasis added). "Consequently, absent a limitation in the substantive provisions of the FDCPA, any aggrieved party, not just a debtor, may bring an action under the statute." *Rawlinson v. L. Off. of William M. Rudow, LLC*, 460 F. App'x 254, 257 (4th Cir. 2012); *see Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649–50 (6th Cir. 1994) ("[T]he ordinary and common understanding of § 1692k is that any aggrieved party may bring an action . . . ."). The substantive FDCPA provision on which Hart relies bars the use of "unfair or unconscionable means to collect or attempt to collect any debt" and includes no requirement that the aggrieved person be a debtor. 15 U.S.C. § 1692f. Accordingly, "any person who has been harmed by an unfair or unconscionable debt collection practice has standing to bring

[2] Michigan law provides for both statutory and common-law conversion claims; because Hart does not reference the conversion statute, the Court assumes he brings only a common-law claim.

a claim under § 1692f." *Rawlinson*, 460 F. App'x at 258. In short, even if Hart did not own the car, he would still be able to bring suit under the FDCPA.

Furthermore, although claims for conversion and unlawful repossession are only available to plaintiffs who hold an interest in the property at issue, Hart held such an interest in the car. Conversion "consists of any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Dep't of Agric. v. Appletree Mktg., LLC*, 779 N.W.2d 237, 244 (Mich. 2010) (internal quotation marks omitted). "A property interest is defined as . . . all or part of a legal or equitable claim to or right in property." *JMC I, LLC v. City of Grand Rapids*, No. 320483, 2015 WL 2214500, at *2 (Mich. Ct. App. May 12, 2015) (cleaned up). Thus, in order to bring a conversion claim, Hart must establish that he had a legal or equitable interest in the car. Similarly, § 440.9625 allows a "debtor" to recover damages for violations of the repossession statute. Mich. Comp. Laws § 440.9625(3)(a). A "debtor," in turn, is "[a] person having an interest . . . in the collateral, whether or not the person is an obligor." *Id.* § 440.9102(bb)(i). Again, Hart's ability to bring a claim hinges on his possession of an interest in the car.

North Star contends that Hart did not own the car because it belonged to his father and legal title was never transferred. Hart counters that he inherited the car upon his father's passing. Although Hart's father did not leave a will and his estate was not probated (Hart Dep. 9), under certain circumstances Michigan law allows heirs to inherit a vehicle without going through the probate process. Specifically, "[i]f an owner of 1 or more vehicles dies and does not leave other property that requires the" opening of a probate case, "the owner's surviving spouse, or an heir of the owner . . . may apply for a title" from the secretary of state, as long as the car is worth less than $100,000. Mich. Comp. Laws § 257.236(2). Hart's father did not have a surviving spouse, so

Hart would be entitled to ownership of the car (or at least co-ownership with his siblings). *See id.* § 700.2103. However, Hart did not apply to the secretary of state for title to the car, so it remains in his father's name. Moreover, it is unclear what other assets Hart's father's estate held, so the process prescribed by § 257.236(2) may not have even been available.

North Star argues that because Hart failed to formally change the title to the car—either through § 257.236(2) or the probate process—he lacked any property interest in it. Under the Michigan Vehicle Code, a person generally cannot acquire legal title to a car without a change to the certificate of title. Michigan courts have "repeatedly held that transfer of title of an automobile cannot be effected without compliance with the statute." *Messer v. Averill*, 183 N.W.2d 802, 804 (Mich. Ct. App. 1970). "A purported transfer of a motor vehicle which is not done in compliance with the M[ichigan Vehicle Code] is void." *In re Ambrose-Burbank*, 563 B.R. 820, 827 (Bankr. E.D. Mich. 2017) (citing *Bayer v. Jackson City Bank & Tr. Co.*, 55 N.W.2d 746, 749 (Mich. 1952)). The fact that someone has the right to acquire title to a car under § 257.236(2) does not mean that they hold legal title. *Frankenmuth Mut. Ins. Co. v. Zaguroli*, No. 333152, 2017 WL 4519859, at *4 (Mich. Ct. App. Oct. 10, 2017) ("He did not hold legal title to the vehicle and, although he may have had the right to become the legal title holder under M[ich. Comp. Laws §] 257.236, he failed to exercise that right.").

However, even if Hart lacked legal title to the car, he may have possessed an equitable interest in it. Although the parties do not cite (and the Court has not found) any Michigan case law directly on point, it is reasonable to understand Hart's right to acquire title to the car as an equitable interest. "Although the legal title to the personal property of a decedent remains in abeyance until the appointment of an administrator and then vests in him in trust, the equitable title is in the heirs, subject to the rights of creditors and expenses of administration." *Reichert v.*

*Bay City Bank*, 248 N.W. 636, 637 (Mich. 1933). Section 257.236 changes the process by which a person can inherit a car, but there is no reason to think it or the Michigan Vehicle Code alter the fundamental principle that an heir who has not yet obtained legal title to personal property due to unsatisfied steps in the formal inheritance process nonetheless possesses equitable title. This principle holds regardless of whether Hart was permitted to proceed under § 257.236 or required to go through probate.

The contrary proposition would produce absurd results. If Hart had no property interest in his father's car before it was repossessed, no one else had a property interest in it either—after all, no representative was appointed to manage his father's estate, so no one held legal title. If no one had a property interest in the car, there would be no remedy if a person stole it from Hart's driveway. More generally, it stands to reason that someone who inherits a car under § 257.236 must have a property interest in the car before they have undergone the proper process with the secretary of state. Obtaining title from the secretary of state takes time, and a prospective owner must have the ability to stop others from stealing the car in the meantime. Similarly, heirs must be able to prevent the theft of estate property before a personal representative is appointed. The obvious mechanism for doing so is asserting an equitable interest that allows the heir to exclude others from possessing the property.

In sum, though Hart lacked legal title to the car when North Star repossessed it, he did have an equitable interest in it. The Court need not define the exact contours of Hart's equitable interest in the car to determine whether removing the car from Hart's driveway interfered with his interest in it. It is sufficient to recognize that a person who is set to inherit a car must be able to exclude others from possessing it, and North Star's repossession of the car interfered with that ability. Thus, Hart may bring claims for conversion and unlawful repossession.

**B. Breach of the Peace**

Hart's claims turn on whether a breach of the peace occurred when North Star repossessed the car. Michigan law provides that a secured party may repossess its collateral "without judicial process if it proceeds without breach of the peace." Mich. Comp. Laws § 440.9609. If the repossessor violates § 440.9609, they are liable for damages under § 440.9625. Moreover, because a party who breaches the peace loses their right to repossess the collateral under § 440.9609, a repossessor who takes the collateral despite a breach of the peace commits conversion. Finally, the FDCPA bars repossession without a "present right to possession of the property," 15 USC § 1692f(6)(A), and one's right to possession is determined by "the applicable state self-help repossession statute." *Alexander v. Blackhawk Recovery & Investigation, LLC*, 731 F. Supp. 2d 674, 679 (E.D. Mich. 2010). So if the repossessor breaches the peace while recovering the collateral, they have also violated the FDCPA.

As the Court recognized in a prior opinion in this case, Michigan courts have not clearly articulated what qualifies as a breach of the peace under § 440.9609, and there is a diversity of views among other states with analogous statutes. *See Hart v. N. Star Recovery, LLC*, 810 F. Supp. 3d 835, 838–840 (W.D. Mich. 2025) (collecting cases). Generally speaking, the breach-of-the-peace rule is intended to limit the violence or conflict that can result from repossession attempts. Self-help repossession allows secured parties to recover collateral without involving the machinery of the courts, but such private enforcement is only acceptable as long as it remains civil. Thus, once a debtor confronts the repossessor, the repossessor must stand down before the situation escalates into violence. Moreover, given that a self-help repossessor acts without judicial process, there is a greater risk of erroneous repossession and thus a greater need for a lawful avenue to resist that repossession. Accordingly, the Sixth Circuit has observed that "an objection, particularly when it is accompanied by physical obstruction, is the debtor's most powerful (and

lawful) tool in fending off an improper repossession because it constitutes a breach of the peace requiring the creditor to abandon his efforts to repossess." *Hensley v. Gassman*, 693 F.3d 681, 689–90 (6th Cir. 2012); *see also id.* at 691 (recognizing the debtor has a "right to resist" repossession).[3]

The Court finds it unnecessary to settle on a precise definition of "breach of the peace" in order to adjudicate the present motion. There are disputed facts regarding the exact interaction between Hart and Anderson, but there is no dispute that ultimately the repossession was accomplished after the police told Hart that he had to give Anderson the car. As the Court noted in its prior opinion, courts often find that "police involvement in a self-help repossession is a breach of the peace." *Roberts v. Image Recovery Serv., Inc.*, 810 F. Supp. 3d 1007, 1012 (S.D. Ill. 2025). The presence of police "chills the plaintiff's right to object" to the repossession, *Hensley*, 693 F.3d at 689, which prevents debtors from challenging erroneous repossessions. While it is true that Hart called the police to the scene, that fact is not dispositive because the police ultimately aided Anderson. *See Gable v. Universal Acceptance Corp. (WI)*, 338 F. Supp. 3d 943, 950 (E.D. Wis. 2018) (holding that police presence constituted breach of the peace even though debtor called police). Regardless of who initially calls the police, "a police officer must not act as a 'curbside courtroom' in resolving a dispute between a repossessor and debtor." *Roberts v. Image Recovery Serv., Inc.*, 810 F. Supp. 3d 1007, 1013 (S.D. Ill. 2025). That is essentially what the officer did here.

[3] The Court recognized in its prior opinion that *Hensley* is in some tension with *People v. Anderson*, 912 N.W.2d 607, 612 (Mich. Ct. App. 2018), where the court suggested that a verbal objection is not sufficient to establish a breach of the peace. But *Anderson* does not challenge *Henlsey*'s underlying point that debtors have a right to object in some manner to the repossession of their property, and that this right to object is enshrined in the breach-of-the-peace standard.

To put it another way: a debtor confronted by a repossessor engaging in self-help has the right to object and force them to use full judicial process instead. *See Hensley*, 693 F.3d at 689–90. Here, the officer's adjudication of Hart and Anderson's dispute short-circuited that statutory design by resolving a repossession with state coercive power but without any of the associated judicial processes. Although Anderson did not summon the police, once the officer had involved himself in the dispute Anderson lost his right to proceed with self-help repossession. By taking the car anyway, Anderson violated § 440.9609.[4]

North Star might object that even if the presence of the police officer constituted a breach of the peace, § 440.9609 permits repossession as long as the secured party does not breach the peace—it says nothing about the debtor or a third party (like the police) causing a breach of the peace. The Court previously acknowledged a difference of opinion as to this issue, and noted that *People v. Anderson*, 912 N.W.2d 607, 612 (Mich. Ct. App. 2018), seemed to support North Star's view. There, a defendant convicted of assaulting two repossession agents argued that his lawyer should have raised as a defense the fact that the agents violated § 440.9609. *Id.* at 612. The agents had come to the defendant's house to tow his car, but the defendant verbally objected and then shot at the agents. The court held that the agents had not breached the peace, and that "[t]o the extent that a breach of the peace occurred, it was a result of [the defendant]'s decision to shoot at the [repossession agents], rather than a result of any conduct on the part of [the agents]." *Id.* Thus, the court rejected the defendant's argument that the agents had violated § 440.9609.

[4] North Star argues that *Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998), is to the contrary, but that case is distinguishable on two grounds. First, *Abbott* did not address the question of whether the repossessor breached the peace; it merely held that police presence does not turn a repossession into an act of the state. *Id.* at 147. Second, *Abbott* held that an officer *does* qualify as a participant in the repossession if they provide "aid" to the repossessor, such as by "advis[ing] [the repossessor] that she had a right to immediate possession of the" collateral. *Id.* Here, the police did exactly that. Another case cited by North Star, *United States v Coleman*, 628 F2d 961, 964 (6th Cir. 1980), is distinguishable on essentially identical grounds.

One could read *Anderson* as implying that § 440.9609 distinguishes between a breach of the peace caused by the debtor and one caused by the repossession agents, and that only the latter violates the statute. Thus, if a debtor unilaterally breaches the peace, the agent may still proceed with the repossession. But this conclusion is unjustified. For one thing, such a principle is incompatible with the logic of *Hensley* and the idea of a right to resist repossession. After all, if a self-help repossession is permitted unless the *repossessor* breaches the peace, no action on the part of the debtor could force the repossessor to stop. And keep in mind that *Anderson* arose in a unique context: § 440.9609 was only relevant as a potential defense to an assault charge. The *Anderson* court did not squarely hold anything regarding an agent's right to repossess collateral. Its conclusion was merely that the defendant could not rely on § 440.9609 to mitigate his criminal liability. That holding has little relevance here.

Moreover, *Hensley*'s rule is consistent with the apparent distinction in *Anderson* between a debtor-caused breach of the peace and a repossessor-caused breach of the peace. When a repossession agent attempts to recover collateral and the debtor physically resists, the agent has not yet violated § 440.9609. The violation arises if the agent *proceeds* with the repossession despite the confrontation. So while a debtor may unilaterally create the conditions for a breach of the peace, compliance with the statute is ultimately in the hands of the repossession agent, who always has the option to leave. In *Anderson*, once the debtor violently resisted, the agents ceased the repossession. Because the agents did not attempt to repossess property after the debtor's breach of the peace, they did not violate § 440.9609.[5]

[5] Under this reading, § 440.9609 prohibits two actions by repossession agents: causing a breach of the peace, or proceeding with a repossession after the debtor has caused a breach of the peace. Instead, one might say that a repossession agent is only liable for their own breaches of the peace, but that an agent breaches the peace if they proceed with a repossession after the debtor objects. The difference between these two articulations is merely semantic.

In sum, the undisputed fact that Anderson only repossessed the car after police instructed Hart to allow him to do so establishes that North Star violated § 440.9609. The Court will thus grant summary judgment to Hart on the issue of liability.

## IV. CONCLUSION

Because there is no genuine dispute that North Star violated § 440.9609, Hart is entitled to summary judgment on his FDCPA, § 440.9625, and conversion claims. The issue of remedies remains outstanding.

An order will enter in accordance with this Opinion.

Dated: August 31, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE